Raymond Fay I represent the Hannan Appellants. I'm going to reserve three minutes for rebuttal, and this morning I'm going to focus on two things, misrepresentation and the Amitangelo case. This case at its core involves material misrepresentations about life insurance benefits. Hartford and Family Dollar falsely told participants that basic benefits were non-contributory at no cost to the participants, when in fact employees did pay for some of the basic benefits with their How did they pay for that? They didn't pay for the basic benefits. They may have been offered supplemental benefits at a higher price than might have been necessary. How did that offer mean that they paid more for what they got in exactly the way they were told? Did they have to take the supplemental benefits? They did not have to take supplemental benefits. Obviously, what we call the cross-subsidization scheme is based on the idea that a healthy number of employees would take the supplemental. That's a risk that Hartford took. Hartford decided that if they got people who were there and then offered them something at what might be a higher price than they could get elsewhere, people would take it and that this would work out. But it could easily have happened that these people chose not to take it. They chose to offer a discount and then to offer another product at a higher price. Where in ERISA is that a violation? Well, it's interesting, Your Honor. You mentioned it as risk and that's the whole point here, that they did assess the risk and based on what they call need in the industry, their actuarial cost and experience principles, they knew what it took to have a single premium that would cover the cost with a profit. And they deep discounted that on the basic side knowing that their work experience told them that there would be a certain number of employees that would buy the supplemental. What is wrong with that? The employees, what's wrong with it is that the core of ERISA is a disclosure statute. It's based on trust principles and these are material representations. What is the false statement? The false statement is that the basic coverage is provided at no cost. But it was provided at no cost to them. They got the basic coverage at no cost. That that made something else more expensive is another matter, but they never said that other things wouldn't cost more. It's curious, Your Honor, that my opponents say, well, we have to look at the cost allocation of the plan as a whole and the question that was just asked indicates, well, let's look at it in two different pieces. The employees are paying a higher premium because they're, in fact, subsidizing the company's premium, single premium. The employees may take the other product or not. It would be. Suppose that your opposing people had decided that they, for whatever reason, to offer the basic for less and to charge more in insurances generally in order to do that because they thought that people like supplemental and would pay more. Would that be, would that have anything, do anything wrong? Just because they offer that to some people who are the same ones, what difference does that make? Well, what difference it makes is what they tell the employees. And the fact that they went out of their way to say that it was non-contributory and that they were not sharing in the cost. What was non-contributory? The basic. The basic, and it was. It was in one sense but not in another because they counted on the employees paying for part of the premium, excuse me, to pay to shore up the discounted cost of the basic. That's how this worked. Now, when we deal with misrepresentations of this kind, typically it's not a matter that's going to be decided on a motion to dismiss. The practice in the industry, which this is kind of the tip of the iceberg, should be explored in discovery and should have a full record. It's a little more complicated than we have here, but there were repeated representations in the documents and plan-related documents that were drafted by both Hartford and by Family Dollar that told them, buy the supplemental, it's a good price. Is your claim of misrepresentation that they said, buy the supplemental, it's a good price, when it wasn't? Is that a misrepresentation? Not totally because what we're saying is they didn't have the information to make the choice. No, I just want to know a simple thing. Did they say, buy the supplemental, it's a good price, when that was a lie, and do you have anything in your complaint that suggests that in a plausible way? I mean, were they misrepresenting that? We have both, Your Honor. In the complaint, we say not only there were misrepresentations about the no cost, but we also say that the value of the supplemental was pumped up, and I believe that's in… It came as if we hadn't done other things. There are lots of things which could be misrepresentation as to the supplemental, but I want to know where you allege that misrepresentation. I would disagree, Your Honor, because it's all part of the same set of representations that were made to the employees. Does the complaint allege that it was not a good price? No. Or does it allege any facts about comparators showing that… It does not because our complaint rests on representations that fiduciaries under ERISA have to make. So we are resting on the fact that when you tell them it's no cost and it isn't, that that's a fiduciary violation. Thank you. You've saved some time for rebuttal. Thank you. Good morning, Your Honors. I may please the Court. My name is Jeremy Blumenfeld, and I represent the Family Dollar Defendant Appellees in this matter. As you've heard, the crux of plaintiff's claims is that the Family Dollar Life Insurance Plan, an ERISA-governed plan, should have charged less for supplemental life insurance using, quote, underwriting or actuarial experience. And based on that, plaintiffs allege breach of fiduciary duty disclosure and prohibited transaction claims. These claims fail as a matter of law, and the district court correctly dismissed them. Three reasons at the outset, Your Honors. The first is that the plan terms here did not provide that supplemental life insurance was going to be priced using underwriting or actuarial standards. The second, and to your question, Judge Calabresi, ERISA does not require that life insurance benefits be priced using underwriting or actuarial price experience. The statutes in here, it's a lengthy statute. It's been referred to by Congress and, excuse me, by the courts as a complex, carefully crafted and detailed statute. It says nothing about the pricing of supplemental or basic life insurance. And the regulation books, Your Honor, as I'm sure you're aware, are twice as thick as this and say nothing about the regulation of pricing with respect to supplemental life insurance. And three, the communications here didn't promise anyone that supplemental life insurance was going to be based using underwriting or actuarial pricing experience. Now you're getting to the point. What plaintiffs were told and what the plan terms called for is that for basic life insurance, you wouldn't have to pay anything for it. And as you said, and as the district court correctly noted, the plaintiffs didn't have to pay anything. The argument is that the statement that was non-contributory was a half-truth because it was contributory in the sense that part of it was being subsidized by supplemental. What you're referring to, Your Honor, I think is perhaps how Hartford might have accounted for this in terms of its profit and loss, but the plan terms didn't speak to that and plaintiffs don't allege that the plan terms required that or anything of the sort. What the plan terms said is for basic life insurance, employees don't have to pay. The plan also had a policy with Hartford and the cost of that policy. The argument is the statement employees don't have to pay is not completely true because employees are paying when they purchase supplemental. But they don't have to pay for the basic life insurance that the plan had and they don't have to pay under the specific plan terms. Really, it's the plan terms that govern what the communications about the plan need to be. If the plan terms said that you get basic life insurance without having to pay any cost associated with it and plaintiffs were told you get basic life insurance without it. If people had to take both basic and supplemental, if that was done or if they had to do it in order to get other benefits that are part of the plan, then this would clearly be misleading, wouldn't it? Because it would say you don't have to pay, but instead you have to do something which costs you more because you are getting that cheaply. But your argument has to be that they don't need to do that. And certainly that's true that they didn't have to do that here, but I wouldn't say it would be misleading in any event because the way of communication about the plan— It would not mislead you. It would mislead me. Well, but ERISA's disclosure scheme, Your Honor, is really based on what the terms of the plan are. And what ERISA requires you to disclose is what the terms of the plan are. And if the terms of the plan required for supplemental life insurance for participants to pay $0.50 per thousand dollars of coverage, then what you should be communicating to plan participants is that it's $0.50 per thousand dollars worth of coverage. And the plaintiffs try to analogize this case to the revenue-sharing arrangements, and they talk about that in their briefs a little bit. And what's notable is, first of all, that's an argument that's waived, but putting that aside, if you look at the cases, the Seventh Circuit's decision in Hecker v. Deere and the Third Circuit's decision in Renfro v. Unisys, they reject the idea that you need to disclose things like revenue-sharing because what's important to plan participants is how much do I have to pay for this benefit and what is the benefit that I get. And no matter how Hartford may account for it on its profit or loss statements— there was found to be a failure of disclosure because the two things were connected, which is why I said that it seemed to me that if they are connected, which is not this case, so I don't know why you're spending time arguing it, that if they were connected, I think it might well come out a different way. As Your Honor just indicated in the prior case, you like to decide the issues that are before you and not issues that are not before you, and that might be more complicated. And with that, I will sit down. Thank you very much, Your Honors. Good morning, Your Honors. Rob Hochman for Hartford Financial. I'll be very brief because I can see that Your Honors have a strong handle on this case. The first thing I want to say is it's actually a good thing that service providers like Hartford can be flexible in how they work with their customers like Family Dollar to structure benefit plans in a way that work for the benefit of Family Dollar and their employees. If no employees had elected to purchase supplemental coverage, would Hartford still be in the business of providing free basic coverage? If we weren't, there's no question that we make a projection about how much money we're going to be able to, how much revenue our plan structure is going to generate when we sit down and work with Family Dollar to try and provide a benefit scheme that they're happy with, that their employees will be happy with, and that will keep us in business. So if we're wrong, next, we're stuck under the agreement for the term of the agreement, and we have to live with that. But obviously, we can't do that forever, and we'd have to change things up, just like any business, that if it projects revenue at a certain level based on its costs and is not able to generate that revenue, it's going to lose. You're projecting making a profit based on the supplemental purely, and then that would cover it. Well, under these allegations, I mean, we're accepting the allegations, it's true. Right, but it's not clear to me that the allegations are exactly that, the basic coverage. Right, all I'm saying is it's not clear that the allegations go to the extent of saying that we're taking the basic coverage at a full loss. Let me just put it this way. Suppose you make a judgment that the people who get basic are people who are generally relatively low income. The people who buy supplemental, just because they buy supplemental, are better off, and that those people are willing to pay more for certain kinds of benefits because they are better off. And therefore, it is to your advantage to offer the basic at less and the supplemental at more because you think those people will buy. Does ERISA preclude that? No. The answer is no. Because at the level of benefit design and at the level of pricing our products, there's no ERISA fiduciary duties yet. All we're doing is competing in the marketplace for Family Dollar's business, and make no mistake, the service provider industry is an enormously competitive industry. And if we sit down and we work with Family Dollar, and Family Dollar has some amount of money they're willing to put towards their employee benefits, that's a form of compensation for them. And we're saying, okay, what's going to be most attractive to the kind of employees you have? And they say, well, what we really care about, what's really important to us, is that everybody get a basic level of insurance coverage. And so we work with them to provide an attractive level of basic insurance coverage that everybody gets at Family Dollar's cost, and that price is real. And when you understand that under ERISA, the setting of that price is outside of ERISA's fiduciary duties, and then you turn to the question of what we're supposed to communicate to employees about the pricing, it becomes clear that there's no false statement, as Your Honors have made clear throughout. We're just describing exactly what we agreed with Family Dollar based on their interests and their effort to provide benefits to their customers. Obviously, I'm running out of time. I did want to say one thing about Amitangelo, which the plaintiffs suggested they were going to talk about, and I want to make sure we should be clear that this case is actually much stronger than Amitangelo because just Calabresi and Amitangelo, the supplemental coverage for Plan A participants, the revenue from the supplemental coverage that was being generated from Plan A participants and being used to subsidize the cost of Plan B participants was required. The Plan A participants had to take it, and they had to take it in order to maintain their Plan A benefits. That case was a summary order. That was a summary order, but I think that we are not bound. True, although I think it's this Court's practice that it's a summary order because there's really no new law being made there. One of the problems with that is that summary orders get decided sometimes a little sloppily, which is why they are not. No, I understand, but what I'm trying to say is that I think it was a summary order in part also because it reflects already existing law about how the structure of plan benefits with respect to a single plan. I could be nasty and ask you to cite me that preexisting law on the basis of that, and I think you'd have trouble finding it. Well, on that specific question, that would be more complicated, but Harris Trust and Hughes Aircraft, the Supreme Court's decisions about benefit structure and taking revenue, that's what I would cite there, and I think it's fully applicable here. And unless Your Honors have any further questions, we respectfully request that you affirm the judgment of the Court. Thank you. We'll hear the rebuttal. Thank you, Your Honor. First, a bit of housekeeping. Paragraph 52F of the complaint addresses the Hartford providing false information in its marketing materials, excuse me, that the price of supplemental, the purchase of supplemental was surprisingly affordable and without high cost because the insurance was sponsored by family dollar at reduced group rates. That's in response to the question about what's in the complaint. Was that a false statement, that it was surprisingly affordable, or is it alleged that that was a false statement? It is. It is a false statement, but in the context of It's alleged in the complaint that, in fact, the premiums were not surprisingly affordable? That's the question. Yes, because it's part of the breach of fiduciary duty allegations. All right. Secondly, one thing about Amitangelo is 90% of that case dealt with the question of vesting of lifetime benefits, and the representations were about change, whether there was change or no change. It did not have to do with all of the issues that have been. And that's what there was prior law, huh? Yes, Your Honor. Because of which it could come out as a summary order. No, the last thing I want to say is this, is that on the question of misrepresentations, you have affirmative misrepresentations and misrepresentations by omission. And the case law tells us about what a material misrepresentation is, and it's material if it adversely affects the decisions of the participants. Now, it's interesting that we hear all of this about how things are done in the industry and what you can do without violating ERISA, and we don't quarrel with that. What we quarrel with is if it's so complicated that you have to have this secretive cross-subsidization scheme, why don't you tell the employees about it and what effect it has on their choices to buy benefits, choosing to go on the outside if they would or to say this is a good deal. I understand you're cross-subsidizing the basic. The complaint here is they weren't told, and they should have been told pursuant to the basic fiduciary obligations of ERISA. Let me be very blunt with you. I wish that ERISA had been written in another way to do that which the people who sponsored it wanted it to, and I wish that ERISA had been interpreted to do much more about protecting employees. ERISA was not written as I think it should have been and hasn't been interpreted in that way, and that's what binds us. So the fact that it might have been nice for ERISA to ask that more be said than was said is an interesting question, but it's not the one that we have before us. What we're asking this Court to do is to implement the fabric of court decisions that have expanded, including the Supreme Court's in Verity v. Al on the issue of misrepresentation. Thank you, Your Honor. Thank you. We'll reserve decision.